**PARDUE et al. v. SITMAN et al. ***

No. 1151.

Court of Appeal of Louisiana. First Circuit.

May 22, 1933.

Fred. G. Benton, of Baton Rouge, for appellant.

Breazeale & Sachse, of Baton Rouge, for appellee Humphreys.

J. D. Womack, of Baton Rouge, for appellee Sitman.

ELLIOTT, Judge.

Mrs. H. O. Pardue, a real estate agent, doing business in the city of Baton Rouge, acting with the authority and consent of her husband, H. O. Pardue, brought suit against Warren Sitman, Jr., and William Humphreys to recover of them, in solido, the sum of $150 with interest. She alleges that she was employed by said Sitman to sell certain property belonging to him, situated in Baton Rouge; that she was subsequently employed by William Humphreys to buy for him the property, which the said Sitman had listed with her for sale; that she brought the parties together, conducted the negotiations between them, which resulted in the sale, and thereby earned a commission; that upon the request of said Humphreys she reduced her commission to $150 and the said Humphreys agreed to pay it; that Sitman and Humphreys afterwards got together, out of her presence, and without her knowledge or consent, consummated the sale without paying her the commission which she had earned; that they are therefore indebted unto her, as stated, and she prays for judgment accordingly.

The defendant Sitman admits that she offered his property to Humphreys, but he avers that she informed him before the sale that, if it was not consummated within a certain time, she would have nothing further to do with it, and to count her out of the deal; that he persuaded Humphreys to buy the property after she had abandoned the matter; that he therefore owes her nothing.

The defendant Humphreys admits that she placed him in touch with Sitman, and that his purchase from Sitman was thereby brought about, but he avers that in bringing it about the plaintiff was acting for Sitman and not for respondent. He admits having a discussion with her concerning the price and that he informed her that it was more than he was willing to pay; that she thereupon suggested, in order to consummate the sale, she would accept from Sitman a smaller commission and did calculate her commission at $150; that he was not concerned, however, with what she might charge Sitman; that she, at that time, submitted to him a written offer, which included a $150 commission to be paid by him, and requested him to sign it, but he refused, whereupon she informed him that she would sell the property to some one else. He admits concluding the transaction, acting direct with Sitman, but avers that he was informed by Sitman previous to the sale that her connection with the transaction had terminated; that he therefore owes her nothing.

There was judgment in favor of the plaintiff and against Sitman for $150 with interest; but her demand against Humphreys was rejected and her suit against him dismissed. The plaintiff has appealed.

The defendant Sitman not having appealed, the judgment against him is not before us for review.

The defendant Humphreys contends that "this appeal represents an attempt on the part of Mrs. Pardue, a real estate agent, to collect a commission from the purchaser of certain property, because the vendor, whose agent she was, did not pay her and because she believes that a judgment against the vendor would be valueless." His contention is that she was the agent of Sitman. There is no inconsistency in occupying, as between Sitman and Humphreys, the position of a broker or intermediary under the Civil Code, art. 3016 et seq. and the fact that she may have started out as the agent of Sitman, did not prevent her subsequently becoming their broker and intermediary. The evidence indicates that such was the role she played, but the important question, which we are to consider on this appeal, is whether she has a just and legal claim against Humphreys for the amount she claims.

As bearing on her dual role, we refer to her petition. In article 1 she alleges that she entered into an oral agreement with Sitman to sell for him lot 5, square 10, College town subdivision of Baton Rouge.

In article 2, that she was in touch with Humphreys, who desired to obtain property for a home site and was negotiating with him in regard to a lot she owned in Lake Hills subdivision.

In article 3, that thereafter said Humph-

reys abandoned the idea of buying a vacant lot and so informed her, whereupon, having the listing with Sitman, she offered that property to Humphreys for a sum, which included a 5 per cent. commission for her services. That the parties were by her efforts brought together and the sale effected.

In article 5 she alleges negotiations between her and Humphreys concerning the purchase, etc., and that he requested her to reduce her commission. That after some negotiation she agreed to reduce her commission to $150, thereby reducing the price of the property to that extent.

In article 6 she alleges that the said Humphreys agreed to take the property at the price stated and orally agreed to pay the amount of her commission in the sum of $150.

In article 7, that Sitman knowing that she had brought him and Humphreys together, nevertheless, conducted private negotiations with Humphreys out of her presence and without her knowledge or consent, consummated a sale of the property, without taking any steps to protect her commission, and without paying her anything for her services. That the said Sitman and the said Humphreys are therefore indebted unto her, in solido, in the sum of $150 with interest.

The defendants each put at issue each one of her averments, concerning her claim against them, and went to trial on the merits. The plaintiff introduced, without objection, all the evidence she had to offer in support of her demand against each of them. Each of the defendants offered all the evidence they had in support of their respective defenses. All the evidence offered for such purpose was received without objection. The only question is whether plaintiff has established her demand against Humphreys.

We may as well state, at the outset, that, under the law and the evidence, she is not entitled to a judgment against the defendants, in solido. "An obligation in solido is not presumed; it must be expressly stipulated. This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law." Civil Code, art. 2093. But the obligation of the defendants may be several as provided by the Civil Code, art. 2078.

The price of the sale from Sitman to Humphreys was a total of $5,294.37.

The plaintiff testifies in support of the alleged liability of Humphreys that Sitman never promised to pay her any commission; that Humphreys is the party who was to pay her; that out of the sum of $1,000, which was to be paid in cash, he agreed she should receive as her commission, $150; that it was to be taken care of and paid by him.

After hearing her testimony, Humphreys took the stand in his own behalf and, tempered by explanations, does not deny that he agreed she should receive $150 as a commission out of the cash price of the sale. We excerpt from his testimony as follows:

"Q. Mrs. Pardue has testified that she told you that her commission was $150.00 and that you agreed to pay that commission. Is that correct? A. No. I did not agree to pay her. I agreed, as the representative of Mr. Sitman to pay the 2nd. mortgage in cash and to pay other things, that were out-standing, plus that $150.00, which amounted to $1,000.-00 at the time. That is the only agreement, other than as Mr. Sitman's representative. That is the only reason why I agreed to pay it.

"Q. As I understand it, you agreed to pay a certain price for the property out of which Mrs. Pardue expected to take a commission? A. That is right.

Again later:

"Q. When Mrs. Pardue discussed with you the matter of the $1,000.00, that had reference to certain specific items, which she mentioned to you? A. That is right.

"Q. Will you repeat what those items were? A. $650.00 for the 2nd. mortgage, $200.-00 for some house furnishings, $150.00 for her commission, and there were some taxes. I have forgotten the exact amount but it all amounted to $1,000.00.

"Q. As a matter of fact the three specific items, which you have named, that is, $650.00 for 2nd. mortgage, $200.00 for the furniture, and $150.00 for the commission made $1,000.-00. A. That is right."

A short time before the sale was made and while the parties were negotiating, Mrs. Pardue placed before Mr. Humphreys a type-written agreement. Its purpose, had it been signed, was to bind Sitman to sell and Humphreys to buy through Pardue & Pardue as agents. At the bottom of the agreement there appears, addressed to Pardue & Pardue, agents, "I accept the above offer and agree to pay you $150.00 commission." This last stipulation was intended for the signature of Humphreys. Mrs. Pardue testifies that when she submitted the document to him, with the request that he sign it, he refused, giving as his reason, "I am going to buy the place, there is no use to sign it," but agreed that it was correct.

After Mrs. Pardue had testified concerning it, Mr. Humphreys was questioned about it by his counsel. In answering the questions, propounded to him by his own counsel, he testified that he had refused to sign it, and denied that he had said at the time to plaintiff that it was correct, but, on cross-examination, he gave as his reason for not signing it that he wanted to examine the house. We copy:

"Q. At the time she presented you with this document just what did you do with ref-

erence to this matter? A. I said I wanted to have the house examined before signing it.

"Q. In other words there was still a question in your mind as to whether you would buy it? A. Absolutely.

"Q. Did you buy it afterwards? A. I bought it on the 24th. I don't know how long after.

"Q. If you did eventually decide to buy the property, these terms were satisfactory? A. I don't know the terms.

"Q. I mean with reference to the $150.00 commission, $650.00 second mortgage, and $200.00 for household furniture. A. If I had bought it through Mrs. Pardue as Mr. Sitman's representative, yes—if I had bought it."

Asked to explain why he had ceased negotiating through Mrs. Pardue, he says:

"Q. Just why did you cease these negotiations with Mrs. Pardue and deal directly with Mr. Sitman. A. Mr. Sitman came around and told me that Mrs. Pardue had given up the idea of selling me the property, and that he was going to sell it to some lady from Mississippi. I don't recall her name * * * and he was going to sell it to her for a certain amount and, if I wanted to buy it, he wanted to give me the preference. I told him to act through Mrs. Pardue. He said Mrs. Pardue is not my representative any more.

"Q. Did you call up Mrs. Pardue and ask if that was true? A. I did not think it necessary."

Continuing his explanation and referring again to Mr. Sitman's advice, he says: "He told me in front of witnesses that Mrs. Pardue had given up the deal and that he would sell me the property direct. That I was not obligated to Mrs. Pardue in any way, shape or form, nor was he obligated to Mrs. Pardue. That he was the owner of the property and could sell it as he wanted to." This explanation made, with varying language more than once, is suggestive that he would not consider that he did not owe Mrs. Pardue the $150, which she claims of him, were it not for the assurances received from Mr. Sitman that his obligation had terminated, on the theory that she had informed Sitman that she had given up the deal.

Taking the testimony of Mr. Humphreys as a whole, he, in effect, admits that he agreed with Mrs. Pardue that she was to receive $150 from the cash part of the price as her commission. It was his own individual undertaking. In making the agreement he was acting for himself. After entering into this agreement with her and after she had performed the service for him and earned the commission, he then, without her knowledge or consent, accepted the advice of Sitman that he was not obligated to pay her as he had agreed.

Sitman testifies that Mrs. Pardue was to receive $150 as her commission to be paid by Humphreys, but that she had inquired of him over the telephone a short time before the sale whether he had seen Mr. Humphreys that day; that he told her no, upon which she said: "If he does not buy that piece of property by five o'clock this afternoon, I am through with the deal." That he notified Mr. Humphreys of what she had said and they proceeded to consummate the sale without her. Mrs. Pardue denies making such a statement to Sitman. Her relinquishment is therefore not proved. Mr. Sitman questioned:

"Q. Is Mrs. Pardue correct in her statement when she says, that you at no time promised to pay her any commission? A. I did not promise any commission.

"Q. That was something she was to arrange with Mr. Humphreys? A. Yes."

Referring to a discussion between Humphreys and himself after the sale, concerning the commission in question, he said:

"Q. Did you discuss the matter of the commission with him at all? A. Yes.

"Q. What did you tell him? A. I told him what Mrs. Pardue had told me Monday afternoon and left it to him about whatever commission she derived out of the sale."

Sitman testified that he did not collect any commission from Mr. Humphreys.

Miss Gassie, niece of Mrs. Pardue and stenographer in her office, testifies that, in a discussion which took place in her presence between Mr. Humphreys and Mrs. Pardue, concerning the cash price to be paid in the sale in question, it was agreed that it should include $150 as commission for Mrs. Pardue. There is no evidence to the contrary.

H. O. Pardue, husband of the plaintiff, testifies that, in a discussion which took place in his presence between Mr. Humphreys and Mrs. Pardue, concerning the price of the sale, it was agreed that the cash price, $1,000, was to include $150 for her commission. There is nothing to the contrary.

Mr. Winston accompanied Mr. Humphreys when he called on Mrs. Pardue about her claim for commission after the sale but gave no testimony of importance.

Mr. Bogan, secretary of People's Building & Loan Association, says that Mrs. Pardue called at his office and asked for information concerning the amount due by Mr. Sitman on his property; that she claimed to be representing Mr. Sitman and that she had to do it to get the information; that he called up Mr. Sitman and he replied that it was all right to give her the information she desired. The evidence shows that this was when Mrs. Pardue first took the business in hand. She wanted to get the amount due by Mr. Sitman on his property for the information of Mr. Humphreys.

The preponderance of the testimony, in fact practically all the testimony, shows that Humphreys entered into an agreement with Mrs. Pardue, that the cash price in the sale from Sitman to himself should include $150 commission for her services in the matter. The obligation undertaken by Humphreys in favor of Mrs. Pardue was not the undertaking of Sitman. Sitman had no power or authority to release Humphreys from his undertaking, except by paying the $150, which he has not done and for aught appears does not intend to. Humphreys must therefore make his obligation good.

The judgment appealed from, to the extent that the demand of Mrs. Pardue against William Humphreys is rejected and her suit against him dismissed, is contrary to the law and the evidence and therefore erroneous. The judgment appealed from to the extent stated is therefore annulled, avoided, and set aside and it is now adjudged and decreed that Mrs. H. O. Pardue have judgment against William Humphreys for $150, with legal interest thereon from judicial demand until paid. The payment of the judgment now rendered against Humphreys is to operate as a satisfaction and extinguishment of her judgment in this case against Warren G. Sitman, Jr.

The defendant Humphreys to pay the costs in both courts.